UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR IMMIGRATION STUDIES,

      Plaintiff,

  v.

US CITIZENSHIP AND IMMIGRATION SERVICES,

      Defendant.

Civil Action No. 24-3206 (LLA)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THERETO**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................................. i

Table of Authorities ....................................................................................................................... ii

Background .................................................................................................................................... 1

Legal Standards .............................................................................................................................. 4

Argument ........................................................................................................................................ 5

      I.      Plaintiff Failed to Reasonably Describe Records Sought. ..................................... 5

      II.     Searching for and Processing Records Responsive to the Request would be Unduly Burdensome. ............................................................................................. 9

      III.    Plaintiff's Request Requires USCIS to Create Records and Conduct Research. . 11

Conclusion ................................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Ctr. for Law & Just. v. Dep't of Homeland Sec.*,
 573 F. Supp. 3d 78 (D.D.C. 2021) .................................................................................... 6, 7
*Am. Fed'n of Gov't Emps. v. Dep't of Com.*,
 632 F. Supp 1272 (D.D.C. 1986) ............................................................................................ 6
*Am. Oversight v. EPA*,
 386 F. Supp. 3d 1 (D.D.C. 2019) .......................................................................................... 12
*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................................ 4
*Armstrong v. Bush*,
 139 F.R.D. 547 (D.D.C. 1991) ................................................................................................ 6
*Assassination Archives v. CIA*,
 720 F. Supp. 217 (D.D.C. 1989) ............................................................................................. 9
*Ayuda, Inc. v. FTC*,
 70 F. Supp. 3d 247 (D.D.C. 2014) ........................................................................................ 11
*Brayton v. Off. of U.S. Trade, Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ............................................................................................. 4
*Cable News Network, Inc. v. FBI*,
 271 F. Supp. 3d 108 (D.D.C. 2017) ........................................................................................ 7
*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................................................ 4
*Ctr. for Immigration Studies v. U.S. Citizenship & Immigration Servs.*,
 628 F. Supp. 3d 266 (D.D.C. 2022) ...................................................................................... 10
*Dale v. IRS,*
 238 F. Supp. 2d 99 (D.D.C. 2002) ...................................................................................... 6, 9
*Evans v. Bureau of Prisons*,
 951 F.3d 578 (D.C. Cir. 2020) ............................................................................................ 5, 6
*Fed. Election Comm'n,*
 711 F.3d 180 (D.D.C. 2013) ................................................................................................... 6
*Feds for Freedom v. Dep't of Defense*, Civ. A.,
 No. 23-3607 (TJK), 2025 U.S. Dist. LEXIS 28557 (D.D.C. Feb. 28, 2025) ......................... 10
*Forsham v. Harris*,
 445 U.S. 169 (1980) .............................................................................................................. 11
*Freedom Watch v. CIA*,
 895 F. Supp. 2d 221 (D.D.C. 2012) ........................................................................................ 6
*Freedom Watch*,
 925 F. Supp. 2d 55 (D.D.C. 2013) ...................................................................................... 6, 9
*Gun Owners of Am., Inc. v. FBI*,
 594 F. Supp. 3d 37 (D.D.C. 2022) .......................................................................................... 6
*Hunt v. Commodity Futures Trading Comm'n*,
 484 F. Supp. 47 (D.D.C. 1979) ............................................................................................... 7

*Int'l Counsel Bureau v. Dep't of Def.*,
   723 F. Supp. 2d 54 (D.D.C. 2010) .................................................................................. 9
*Landmark Legal Found. v. EPA*,
   272 F. Supp. 2d 59 (D.D.C. 2003) ................................................................................ 11
*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ........................................................................................ 5
*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ...................................................................................... 4
*Media Rsch. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ............................................................................ 4, 5
*Mil. Audit Proj. v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ........................................................................................ 4
*Nat'l Sec. Couns. v. CIA*,
   898 F. Supp. 2d 233 (D.C.C. 2012) ........................................................................... 6, 11
*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ...................................................................................... 5
*v. Dep't of Homeland Sec.*, Civ. A.,
   No. 22-8344, 2024 U.S. Dist. LEXIS 21645 (S.D.N.Y. Feb. 7, 2024) ........................... 7
*Wattleton v. Dep't of Just.*,
   Civ. A. No. 22-0145 (BAH), 2022 WL 17149680 (D.D.C. Nov. 22, 2022) ............... 11
*Wolf v. CIA*,
   569 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................. 11

**Statutes**

5 U.S.C. § 552(3)(A) .............................................................................................................. 5

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 4

**Regulations**

C.F.R. § 5.3(b) ...................................................................................................................... 7

Defendant U.S. Citizenship and Immigration Services ("USCIS") respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.

## INTRODUCTION

Plaintiff the Center for Immigration Studies brings claims against U.S. Citizenship and Immigration Services under the Freedom of Information Act ("FOIA) alleging USCIS failed to respond to its April 24, 2024 FOIA request. As explained below, USCIS is entitled to summary judgment in its favor because Plaintiff did not submit a proper FOIA request. Specifically, Plaintiff did not reasonably describe the records sought. To the extent that Plaintiff has described the records sought, complying with the request would require an unreasonably burdensome search and post-search processing, and would require USCIS staff to conduct research or create records that do not exist.

## BACKGROUND

On January 6, 2023, the Department of Homeland Security announced a new process for certain Venezuelan, Cuban, Haitian, and Nicaraguan Nationals to seek admission to temporarily reside in the United States for up to two years through "parole status." USCIS, DHS Implements New Processes for Cubans, Haitians, and Nicaraguans and Eliminates Cap for Venezuelans (Jan. 6, 2023), https://www.uscis.gov/newsroom/alerts/dhs-implements-new-processes-for-cubans-haitians-and-nicaraguans-and-eliminates-cap-for-venezuelans (last visited, May 10, 2025). Among other eligibility criteria, individuals who sought to benefit from this program needed a "supporter in the United States who will provide financial and other support." *Id*. U.S. based supporters who sought to sponsor a prospective parolee for this program needed to submit an "Online Request to be a Supporter and Declaration of Financial Support" to USCIS, also known as Form I-134A. *Id*.; *see also*, Sample Form I-134A (Panter Decl. Ex. C); USCIS, DHS Implements New Processes, *supra*.

On April 19, 2024, Plaintiff submitted a FOIA request to USCIS for records regarding the parole program. Panter Decl. ¶ 5. Specially, the request sought,

1. For those "Supporter[s]" or "U.S.-based supporter[s]" of approved beneficiaries who sought humanitarian parole, who were categorized as "Non-immigrant" in the USCIS production for request COW2024003069 (Case 24-cv-1671), please provide all records sufficient to show the type of visa each "Non-immigrant" was admitted under (e.g., for the 2,353 "Non- immigrants" identified, breaking down that number into the quantity of each type of visa utilized would be sufficient).

2. For those "Supporter[s]" or "U.S.-based supporter[s]" of approved beneficiaries who sought humanitarian parole, who were categorized as "Other" in the USCIS production for request COW2024003069 (Case 24- cv-1671), please provide all records sufficient to show any and/or all the following information:

   a. How USCIS defines "Other", or determines whether a "Supporter" is appropriately categorized as "Other" (e.g., policy documents, reports, memos, manuals, etc.);

   b. The different categories/classifications of entities that make up the category of "Other" and their respective quantities;

   c. How many of those categorized as "Other" represent a non human entity (e.g., corporation, organization, governmental institution, etc.);

   d. For those categorized as "Other", and represent a non-human entity, provide the name of each entity, and/or the number of parolees they have each

*See* Pl. FOIA Request (ECF No. 1-1). On April 27, 2024, the USCIS acknowledged receipt of the request. Letter to Farnsworth (ECF No. 1-2). The "request COW2024003069" that Plaintiff described was a prior request from Plaintiff, which sought data on filers of USCIS Form I-134A who were U.S. based supporters of individuals who applied for the parole program. Panter Decl. ¶ 10. In response to "Request No. COW2024003069," USCIS produced a spreadsheet with data on 213,739 supporters. *Id*. ¶ 11.

USCIS attempted to search for records responsive to the request that is the subject of this lawsuit. *See* Pl. FOIA Request (ECF No. 1-1). USCIS construed the request as seeking data related to a breakdown of visa categories supported by Form I-134A. Panter Decl. ¶ 20. Because of its familiarity with USCIS record systems, including the systems that store Forms I-134A, USCIS tasked its Office of Performance and Quality with conducting the search. *Id.* ¶ 21. The Office of Performance Quality determined that it could not access the requested information because the information is not collected as part of the Forms I-134A and that the information could not be provided without creating records. *Id*. ¶ 22.

Next, USCIS tasked its Verification Division to search for potential responsive records. *Id.* ¶ 23. The Verification Division is responsible for managing programs that help employers, government agencies, and licensing bodies confirm an individual's immigration status or authorization to work in the United States. *Id*. The Verification Division searched its E-Verify system and its Systematic Alien Verification for Entitlements system but did not find any responsive records. *Id*. Finally, USCIS tasked its Office of Policy and Strategy to the same. *Id.* ¶ 24. The Office of Policy and Strategy is the principal policy advisor for the Director and other USCIS leadership and it performs research and analysis on immigration issues and program evaluations, including analyzing immigration trends. *Id.* The Office of Policy Strategy reported that it does not maintain the information that Plaintiff sought. *Id*. Additionally, to the extent that USCIS can discern the records that Plaintiff is seeking, USCIS has determined that processing the request would take at least twenty-seven years to complete. *Id.* ¶¶ 15-16. USCIS would also need to create records that do not exist. *Id*. ¶¶ 15, 17-19. Plaintiff filed suit alleging violation of FOIA on November 13, 2024. *See generally*, Compl.

**LEGAL STANDARDS**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears

'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

### I.     Plaintiff Failed to Reasonably Describe Records Sought.

Plaintiff's request heavily relies on broad formulations thereby failing too reasonably describe the records sought. Panter Decl. ¶ 13. Plaintiff seeks (1) "all records sufficient to show" the type of visa each parole beneficiary was admitted under, and (2) "all records sufficient to show any and/or all" of four subcategories of information regarding U.S.-based supporters. Pl. FOIA Request (ECF No. 1-1). These categories include (a) "[h]ow USCIS defines 'Other', or determines whether a 'Supporter' is appropriately categorized as 'Other'" (b) "The different categories/classifications of entities that make up the category of "Other" and their respective quantities;" (c) "How many of those categorized as 'Other' represent a non-human entity; and (d) For those categorized as 'Other', and represent a non-human entity, provide the name of each entity, and/or the number of parolees they have each sponsored." *Id.*

FOIA requires federal agencies, upon request, to "make the records promptly available to any person" who "(i) reasonably describes" and makes the request "(ii) in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(3)(A). A plaintiff fails to state a FOIA claim when it fails to reasonably describe the records sought. *See Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)) ("[u]nder FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records'"); *Citizens for Resp. & Ethics in Wash.*

*v. Fed. Election Comm'n,* 711 F.3d 180, 185 (D.D.C. 2013). Record requests should not be "so broad as to impose an unreasonable burden on the agency." *Am. Fed'n of Gov't Emps. v. Dep't of Com.,* 632 F. Supp 1272, 1278 (D.D.C. 1986), *aff'd*, 907 F.2d 209 (D.C. Cir.1990). "An agency's decision to withhold agency records is not improper if it has not "receive[d] a request that 'reasonably describes such records.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020). In this district, "[t]he linchpin inquiry is whether 'the agency is able to determine precisely what records are requested.'" *Dale v. IRS,* 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (citing *Tax Analysts v. IRS*, F.3d 607, 610 (D.C. Cir. 1977)). Further, records are reasonably described "if a professional employee of the agency familiar with the subject matter can locate the records with a 'reasonable amount of effort.'" *Armstrong v. Bush*, 139 F.R.D. 547, 553 (D.D.C. 1991) (quoting *Am. Fed'n of Gov't Emps.*, 907 F.2d at 203). However, "whether a particular FOIA request 'reasonably describes' the records sought is a highly context-specific inquiry." *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 37, 47 (D.D.C. 2022) (quoting *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 278 (D.C.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020)).

In this regard, courts have rejected FOIA requests that contain vague and ambiguous language, including "pertaining to" "related to" and "regarding," finding such terms overbroad. *See Gun Owners of Am.*, 594 F. Supp. 3d at 51 (finding that plaintiff's request for "all" documents "related to" a topic to be overbroad); *Am. Ctr. for Law & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78 (D.D.C. 2021) (finding plaintiff's request for documents "referencing or regarding in any way" eight topics to be overbroad); *Freedom Watch*, 925 F. Supp. 2d 55, 62-63 (D.D.C. 2013) (finding a "relating to" request "overbroad"); *Freedom Watch v. CIA,* 895 F. Supp. 2d 221, 223, 229 (D.D.C. 2012) (finding that a request for records "that refer or related to the following [topics] in any way" was "vague" and extraordinarily broad"); *Latham v. Dep't of Just.*, 658 F. Supp. 2d

151, 161 (D.D.C. 2009) (a request for records "that pertain in any form or sort [to the plaintiff]" was "overly broad*"); Hunt v. Commodity Futures Trading Comm'n*, 484 F. Supp. 47, 51 (D.D.C. 1979) (plaintiffs who requested records "concern[ing]" them ought to have "specif[ied] more carefully the information they were seeking").  The same concern arises for requests, like Plaintiff's that seek "records sufficient to show" a particular piece of information.  *Haitian Bridge All. v. Dep't of Homeland Sec.*, Civ. A. No. 22-8344, 2024 U.S. Dist. LEXIS 21645, at *21 (S.D.N.Y. Feb. 7, 2024).

Plaintiff requested five items, broken down into two similarly broad categories: (1) "all records sufficient to show the type of visa each 'non-immigrant' was admitted under" and (2) "all records sufficient to show any and/or all" of the categories of the individual 24,678 "'supporters' classified as 'other'" in USCIS's response to the a previous FOIA request.  Panter Decl. ¶ 13.  A request that seeks "any and all documents and records" that "relate in any way" to a broad subject is too vague.  *Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017).  Such broad descriptions "leave the unfortunate FOIA processor assigned to such a case in a hopeless muddle without clear guidance about documents are being sought."  *Am. Ctr. for Law & Just.*, 573 F. Supp. 3d at 85.

Moreover, the Department of Homeland Security's FOIA regulations echo these requirements, advising requesters to "describe the records sought in sufficient detail to enable [Department] personnel to locate them with a reasonable amount of effort."  6. C.F.R. § 5.3(b).  "A reasonable description contains sufficient information to permit an organized, non-random search for the record based on the component's filing arrangements and existing retrieval systems."  *Id*.  Crucially, rather than refuse to process the request at the outset, USCIS conducted a search, and the fruits of the search demonstrate that the records could not be easily retrieved by a professional employee familiar with the subject matter and thus did not comply with the

Department's FOIA regulations. Panter Decl. ¶¶ 20-24. USCIS tasked its Office of Performance Quality, Verification Division, and Office of Policy and Strategy with conducting the search because these are the offices within USCIS that are familiar with the subject-matter of Plaintiff's request. *Id*. ¶¶ 21-24.

Plaintiff's request generally seeks various data points about parolees and their supporters. Pl. FOIA Request (ECF No. 1-1). USCIS logically first tasked the Office of Performance Quality with conducting a search because that office's mission is to preserve and enhance the quality of USCIS data by serving as stewards of that data, and providing datasets and analysis to USCIS directorates, program offices, and outside stakeholders. Panter Decl. ¶ 21. The Office of Performance Quality is familiar with the systems that collect the Forms I-134A which, as explained above, are the forms that U.S.-based individuals needed submit to sponsor a parole beneficiary. *Id*. The Office of Performance Quality advised that it did not have records that it could process. *Id.* ¶ 22. Next, USCIS tasked the Verification Division, which is responsible for managing programs that help employers, government agencies, and licensing bodies confirm an individual's immigration status or work authorization in the United States. *Id.* ¶ 23. The Verification Division searched two of its databases: (1) E-Verify – A web-based system that allows employers to confirm the employment eligibility of newly hired workers; and (2) Systematic Alien Verification for Entitlements–A program that helps federal, state, and local government agencies verify a noncitizen's immigration status to determine eligibility for public benefits, licenses, and other services. *Id.* The Verification Division did not find responsive information in either database. *Id*. Finally, the Office of Policy and Strategy, the principal policy advisor for the USCIS Director, which also performs research and analysis on immigration issues and analyzes immigration trends, reported that it did not have responsive information. *Id.* ¶ 24.

Accordingly, because Plaintiff's request did not describe the records in a manner for USCIS to determine what specific records it was seeking, and professional USCIS staff members familiar with the subject matter attempted to conduct a search based on Plaintiff's request, USCIS correctly denied the request for failure to reasonably describe the records sought.

**II.     Searching for and Processing Records Responsive to the Request would be Unduly Burdensome.**

Even if it were possible to determine which specific records Plaintiff was seeking, USCIS still should not be compelled to process the request because doing so would be unduly burdensome. Overbroad and unreasonably burdensome requests are invalid because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989). Nor was FOIA intended to allow requesters to conduct a "fishing expedition" through agency files. *Dale*, 238 F. Supp. 2d at 104-05. This limitation protects the ability of federal agencies to prioritize their resources, while also providing the public reasonable access to agency records. *See*, *e.g.*, *Int'l Counsel Bureau v. Dep't of Def.*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010). Ultimately, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps.*, 907 F.2d at 209; *see also Freedom Watch v. State*, 925 F. Supp. 2d 55, 62-63 (D.D.C. 2013) (dismissing complaint where overbroad requests were "infirm from the beginning" regardless of defendants' response to the requests). "The upshot is that, when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

In part 1 of the request, Plaintiff seeks "all records sufficient to show the type of visa each 'non-immigrant' was admitted under." Pl. FOIA Request (ECF No. 1-1). Conducting a search for these records would require USCIS to process, review, and research records pertaining to all 2,353

individuals listed as "Non-immigrants" in the Form I-134A applications. Panter Decl. ¶ 15. Specifically, USCIS would need to review the A-File or other personal information for each of the individuals to determine their respective visa statuses. *Id.* USCIS would not be able to find this information by simply reviewing each Form I-134A because that form does not include the beneficiary's visa status. *Id.* Processing all records sufficient to show the visa status of all 2,353 individuals would require at least 4,706 hours or 588 workdays of research, review and processing. *Id.* Part 2 of the request sought information regarding the 24,678 Form I-134A applications categorized as "Other." *Id.* ¶ 16. To conduct this search, USCIS would need to review all 24,678 Form I-134A applications and determine each supporter's category and whether a particular supporter is a non-human entity. *Id.* USCIS estimates that processing all 24,678 Forms I-134A would take 49,356 hours or 6,169 workdays. *Id.*

Even if a USCIS FOIA analyst worked on processing this request exclusively on every federal workday without taking any vacations or sick days, processing the request would take at least twenty-seven years. *Id.* ¶¶ 15-16. The amount of time required to process these records exceeds the estimated time that courts in this jurisdiction have found to be unduly burdensome, easily justifying a ruling that requiring USCIS to fully respond to the request would be unreasonably burdensome. *See e.g. Feds for Freedom v. Dep't of Defense*, Civ. A. No. 23-3607 (TJK), 2025 U.S. Dist. LEXIS 28557, at *8 (D.D.C. Feb. 28, 2025) (finding a request unduly burdensome where "it would take a team of three FOIA attorneys, working around the clock, over a year to accomplish the over 6,500 hours of work required to complete Plaintiff's request"); *Ctr. for Immigration Studies v. U.S. Citizenship & Immigration Servs.*, 628 F. Supp. 3d 266, 272 (D.D.C. 2022) (agreeing that a request that would require "about 1,018 workdays—about two years and nine months" to process is too burdensome); *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247,

275-76 (D.D.C. 2014) (8,000 hours to process a request is unduly burdensome); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (finding that search of microfilm files requiring frame-by-frame reel review that would take estimated 3,675 hours constitutes unreasonably burdensome search).

Accordingly, the Court should grant summary judgment in Defendant's favor because complying with the request would be unreasonably burdensome.

### III. Plaintiff's Request Requires USCIS to Create Records and Conduct Research.

Finally, Plaintiff's FOIA request is improper because responding to the request will require USCIS to create new records and conduct research on Plaintiff's behalf. It is well established that "FOIA does not require an agency to create a document in response to a request." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003); *accord Wattleton v. Dep't of Just.*, Civ. A. No. 22-0145 (BAH), 2022 WL 17149680, at *4 (D.D.C. Nov. 22, 2022) ("[T]he 'FOIA imposes no duty on the agency to create records.'" (*quoting Forsham v. Harris*, 445 U.S. 169, 186 (1980))), aff'd, No. 22-5337, 2023 WL 6531751, at *1 (D.C. Cir. Oct. 5, 2023) ("[A]ppellee had no duty to create records in response to appellant's FOIA request."). Additionally, "an agency need not 'analyze data' or 'conduct research' in response to a FOIA request[.]" *Wattleton*, 2022 WL 17149680, at *4 (*quoting Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012), aff'd, 969 F.3d 406 (D.C. Cir. 2020)). When responding to a FOIA request "would require manual review and sorting of numerous electronic records and the ensuing compilation of lists that do not otherwise exist[, t]hat exercise self-evidently amounts to records creation, which FOIA does not require." *Nat'l Sec. Couns.,* 969 F.3d at 409. Here, USCIS explained that complying with the FOIA request would be impossible without creating new records. Panter Decl. ¶¶ 17-19

As explained above, USCIS does not maintain the visa status of all 2,353 non-immigrants referenced in part 1 of the request as part of the Form I-134A or in an otherwise easily retrievable format. Panter Decl. ¶ 15. To comply with this request, USCIS would need to conduct research

regarding each beneficiary and create a new document showing the number of beneficiaries who have each type of visa.  *Id.* ¶ 15, 19.  The same problem arises in responding to part 2 of Plaintiff's request.  USCIS does not track the types of supporters in an easily retrievable format.  *Id.* ¶ 18. To comply with this request, a USCIS FOIA analyst would need to review the information produced in response to Request No. COW2024003069, and then create a new dataset that identifies the classifications of the supporters that are categorized as "other," the number of each of the classifications, the number of supporters that are non-human entities, and then list the name of each non-human entity and the number of beneficiaries that each non-entity sponsored.  Pl. FOIA Request (ECF No. 1-1); Panter Decl. ¶¶ 17-19.

Completing this task require significant time and resources, diverting personnel from processing other FOIA requests and essential agency functions.  Panter Decl. ¶ 18.  "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters."  *Am. Oversight v. EPA*, 386 F. Supp. 3d 1, 15 (D.D.C. 2019).  USCIS will process any request for easily retrievable records but is not required to conduct research or create new records.  Panter Decl. ¶¶ 17-19.  Because complying with Plaintiff's request would force USCIS to take steps that FOIA does not require, the Court should grant summary judgment in favor of USCIS.

\*       \*       \*

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendant's favor.

Dated: May 13, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:     */s/ John J. Bardo*
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*