**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR IMMIGRATION STUDIES, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> *Defendant*. | Civil Action No. 24 - 3206 (LLA) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Center for Immigration Studies (the "Center") brings this action against the U.S. Citizenship and Immigration Services ("USCIS"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arising out of its request for certain records. ECF No. 1. This matter is before the court on the parties' cross-motions for summary judgment. ECF Nos. 15, 17. For the reasons explained below, the court denies USCIS's motion for summary judgment and grants in part and denies in part the Center's cross-motion for summary judgment.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Center is a nonprofit research and educational foundation that seeks to educate immigration policymakers and the public about "the social, economic, environmental, security, and fiscal consequences of legal and illegal immigration into the United States." ECF No. 1 ¶ 3. In June 2024, the Center filed suit against USCIS in connection with an April 2024 FOIA request related to the "CHNV parole programs," which "permitted citizens or nationals of Cuba, Haiti, Nicaragua, and Venezuela, and their immediate family members, with a confirmed U.S.-based

supporter[,] to request authorization to travel to the United States to be considered for parole into the United States for a temporary period of up to two years." USCIS, *FAQs on the Effect of Changes to Parole and Temporary Protected Status (TPS) for SAVE Agencies*;[1] *see* Compl., *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-1671 (D.D.C. June 8, 2024), ECF Nos. 1, 1-1.[2]

Financial supporters of potential CHNV parole beneficiaries would complete a Form I-134 or Form I-134A through USCIS. ECF No. 15-2, at 23-36;[3] ECF Nos. 17-4, 17-5. The forms required supporters to provide their immigration status. ECF No. 15-2, at 28; ECF No. 17-4, at 2. The Form I-134 included the categories "U.S. Citizen," "U.S. National," "Lawful Permanent Resident," "Nonimmigrant," "Asylee," "Refugee," "Parolee," "TPS holder," "Beneficiary of deferred action (including DACA) or Deferred Enforced Departure," or "Other." ECF No. 17-4, at 2. The Form I-134A allowed a supporter to select "U.S. Citizen," "U.S. National," "Lawful Permanent Resident," "Nonimmigrant," or "Other." ECF No. 15-2, at 28. The Center's April 2024 FOIA request sought information about the number of and details about "Supporter[s]" and "U.S.-based supporter[s]" of approved CHNV parole program beneficiaries. Compl., *Ctr. for*

---

[1] *Available at* https://perma.cc/SU3G-ECCE. The Department of Homeland Security terminated the CHNV parole programs in March 2025. *Id.* The court takes judicial notice of the information available on USCIS's public website for background purposes. *See Pharm. Rsch. & Mfrs. of Am., v. U.S. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (taking judicial notice at the summary-judgment stage of the "Frequently Asked Questions" page posted on an agency's website).

[2] The court takes judicial notice of the Center's complaint in *Center for Immigration Studies*, No. 24-CV-1671 (D.D.C. June 8, 2024), ECF No. 1. *See Aiello v. Novartis Pharms. Corp.*, 746 F. Supp. 2d 89, 91 & n.1 (D.D.C. 2010) (taking judicial notice at the summary-judgment stage of court documents filed in another district).

[3] The citations to ECF Nos. 1-1 and 15-2 refer to the CM/ECF-generated page numbers at the top of each page rather than any internal pagination.

*Immigr. Stud.*, No. 24-CV-1671 (D.D.C. June 8, 2024), ECF No. 1-1, at 1; *see* ECF No. 15-2, at 4 ¶ 10.  In response to the Center's suit, USCIS produced an Excel spreadsheet with a breakdown of "Supporters," including zip codes showing where each resided.  ECF No. 15-2, at 4 ¶ 11; *see* ECF No. 17-2.  The Center and USCIS then stipulated to dismissing the case with prejudice.  Stipulation of Dismissal, *Ctr. for Immigr. Stud.*, No. 24-CV-1671 (D.D.C. Dec. 10, 2024), ECF No. 14.

In August 2024, the Center sent USCIS a follow-on FOIA request about the CHNV parole programs seeking the following information:

1. For those "[S]upporter[s]" or "U.S.-based supporter[s]" of approved beneficiaries who sought humanitarian parole, who were categorized as "Non-immigrant" in the USCIS production for request COW2024003069 (Case 24-cv-1671), please provide all records sufficient to show the type of visa each "Non-immigrant" was admitted under (e.g., for the 2,353 "Non-immigrants" identified, breaking down that number into the quantity of each type of visa utilized would be sufficient).

2. For those "Supporter[s]" or "U.S.-based supporter[s]" of approved beneficiaries who sought humanitarian parole, who were categorized as "Other" in the USCIS production for request COW2024003069 (Case 24-cv-1671), please provide all records sufficient to show any and/or all the following information:

    a. How USCIS defines "Other", or determines whether a "Supporter" is appropriately categorized as "Other" (e.g., policy documents, reports, memos, manuals, etc.);

    b. The different categories/classifications of entities that make up the category of "Other" and their respective quantities;

    c. How many of those categorized as "Other" represent a non-human entity (e.g., corporation, organization, governmental institution, etc.);

    d. For those categorized as "Other", and represent a non-human entity, provide the name of each entity,

3

and/or the number of parolees they have each sponsored.

ECF No. 1-1, at 2 (alterations in original); *see* ECF No. 15-1 ¶ 1; ECF No. 17-6 ¶ 1.  Later that month, USCIS sent the Center a letter acknowledging the request.  ECF No. 1-2, at 2-3; ECF No. 15-2, at 4 ¶ 9.

After not receiving any other response from USCIS regarding its August 2024 FOIA request, the Center filed this action in November 2024.  ECF No. 1.  USCIS filed an answer to the Center's complaint, ECF No. 10, and the court directed the parties to meet and confer and file a joint status report, ECF No. 11.  In February 2025, the parties filed separate status reports due to the Center's mistake in calendaring the court's deadline.  ECF Nos. 12, 13.  USCIS stated that the Center had failed to reasonably describe the records sought and requested a schedule for briefing summary judgment, ECF No. 12 ¶ 1, while the Center sought a further opportunity to meet and confer with USCIS, ECF No. 13 ¶¶ 7-8.  The court directed the parties to again meet and confer. Mar. 3, 2025 Minute Order.  In March 2025, the parties filed a joint status report, in which they stated that they were unable to resolve their disagreement "regarding whether [the Center] reasonably described the records sought." ECF No. 14 ¶ 1.  They requested a schedule for briefing summary judgment, *id.* ¶ 3, which the court granted, Mar. 28, 2025 Minute Order.  USCIS then filed a motion for summary judgment, ECF No. 15, and the Center filed a cross-motion for summary judgment, ECF No. 17.  Both motions are fully briefed.  ECF Nos. 15 to 17, 20 to 23.

## II.    LEGAL STANDARDS

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  "[T]he vast

4

majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

An agency's duties under FOIA are triggered "only once [the] agency has received a proper FOIA request."  *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013).  A FOIA request must "reasonably describe[]" the records being requested. 5 U.S.C. § 552(a)(3)(A).  A request meets this requirement if it is "sufficient [to] enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."  *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990) (quoting H.R. Rep. No. 93-876 (1974)).  "Broad, sweeping requests lacking specificity are not sufficient."  *Dale v. Internal Revenue Serv.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002).  But even where a request has "sufficient precision to enable the agency to identify [the records]," "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'"  *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. Cent. Intel. Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978)).  Because it is "the requester's responsibility to frame [its] request[] with sufficient particularity to ensure that searches are not unreasonably burdensome[] and to enable the searching agency to determine precisely what records are being requested," an agency is not required to respond to a request that falls short in either respect.  *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 248 (second alteration in original) (quoting *Assassination Archives & Rsch. Ctr., Inc. v. Cent. Intel. Agency*, 720 F. Supp. 217, 219 (D.D.C. 1989)).  At bottom, an agency is not "required to divine a requester's intent." *Hall & Assocs. v. U.S. Env't Prot. Agency*, 83 F. Supp. 3d 92, 102 (D.D.C. 2015) (quoting

5

*Landmark Legal Found. v. Env't Prot. Agency*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)) (collecting cases), *aff'd*, No. 16-5315, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018) (per curiam).

When a party challenges the adequacy of an agency's search at summary judgment, "the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks omitted) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "FOIA, however, 'only requires disclosure of documents that already exist, not the creation of new records not otherwise in the agency's possession.'" *Aguiar v. Drug Enf't Admin.*, 992 F.3d 1108, 1111 (D.C. Cir. 2021) (quoting *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 969 F.3d 406, 409 (D.C. Cir. 2020)). "The adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.'" *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1027 (D.C. Cir. 2024) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011)). A court may grant summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). Agency affidavits must "set[] forth the search terms and the type of search performed[] and aver[] that all files likely to contain responsive materials . . . were searched." *Reps. Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

"[O]nce the agency has provided a 'reasonably detailed' affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine

dispute of material fact exists as to the adequacy of the search." *Pinson v. U.S. Dep't of Just.*, 189 F. Supp. 3d 137, 149 (D.D.C. 2016) (quoting *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).  Such countervailing evidence may include "problems with . . . the specific search terms used or the inadequacy of the particular locations searched." *Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 117 (D.D.C. 2019). However, because an agency's affidavits or declarations "are accorded a presumption of good faith, [they] cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intel. Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam)).  If "a review of the record raises substantial doubt, particularly in view of well[-]defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 211 (D.D.C. 2018) (internal quotation marks omitted) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

## III.    DISCUSSION

In moving for summary judgment, USCIS challenged all parts of the Center's FOIA request and argued that (1) the Center's request failed to reasonably describe the records it seeks, ECF No. 15, at 5-9; ECF No. 21, at 1-4; (2) searching for and processing any responsive records would be unduly burdensome, ECF No. 15, at 9-11; ECF No 21, at 4-6; and (3) responding to the Center's request would require USCIS to create records and conduct research, ECF No. 15, at 11-12; ECF No. 21, at 6-7.  As support for its arguments, USCIS provided a declaration from its Acting Chief FOIA Officer, Jarrod Panter.  ECF No. 15-2, at 1-9.  In its cross-motion, the Center does not dispute USCIS's explanation for not responding to Part 1 of the FOIA request, *see*

7

*generally* ECF No. 17-1 (addressing arguments only regarding Part 2); ECF No. 23, at 5 (conceding that the Center is "satisfied" with USCIS's explanation for Part 1, concerning "Supporter[s]" categorized as "Non-immigrant"), but it contends that USCIS has not carried its burden with respect to Part 2 of the request, concerning "Supporter[s]" categorized as "Other," ECF No. 17-1, at 24-30; ECF No. 23, at 11-24. With regard to Part 2, the Center argues that USCIS failed to conduct the adequate search for responsive records that FOIA requires. ECF No. 17-1, at 24-30; ECF No. 23, at 11-24. The court concludes that the Center reasonably described the records sought in Part 2 of its FOIA request and that USCIS's search efforts for Part 2 were inadequate.[4] In light of those determinations, the court deems it premature to assess the burden on USCIS of searching for and producing responsive documents for Part 2 and whether doing so would require USCIS to create new records or conduct research.

### A.    The Center's Description of Records Sought

In Part 2 of its FOIA request, the Center sought "all records sufficient to show any and/or all the . . . information" responsive to four distinct inquiries relating to supporters of CHNV parole applicants who had self-identified their immigration status as "Other" on the relevant forms: (a) "[h]ow USCIS defines 'Other', or determines whether a 'Supporter' is appropriately

---

[4] Because the Center does not contest the adequacy of USCIS's search for Part 1, ECF No. 23, at 5, the court will deny USCIS's motion for summary judgment as moot as it concerns that portion of the Center's request. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("[A] motion for summary judgment cannot be 'conceded' for want of opposition."); *Shapiro v. U.S. Dep't of Just.*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017) ("Where the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction.").

categorized as 'Other,'" including "policy documents, reports, memos, [and] manuals"; (b) "[t]he different categories/classifications of entities that make up the category of 'Other' and their respective quantities"; (c) "[h]ow many of those categorized as 'Other' represent a non-human entity" like a "corporation, organization, [or] governmental institution"; and (d) "[f]or those categorized as 'Other'[ that] represent a non-human entity, . . . the name of each entity . . . and/or the number of parolees they have each sponsored."  ECF No. 1-1, at 1; ECF No. 15-2, at 3-4 ¶ 8. USCIS argues that the Center failed to reasonably describe the records sought because its request is analogous to those seeking "any and all documents and records" that "relate" to a given subject, which courts routinely hold to be unreasonably vague.  ECF No. 15, at 7 (quoting *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 271 F. Supp. 3d 108, 110, 112 (D.D.C. 2017)); *see id.* at 6-7 (collecting cases).  The Center defends its request on the ground that a request for "all records *sufficient* to show" something is narrower than a request for "all records *related* to" the same topic.  ECF No. 17-1, at 9-11 (emphases omitted).  The Center further maintains that it used "any and/or all the following information" as a "segregability clause so the entire request would not fail if" one or more of the subparts failed.  *Id.* at 12.

The court agrees with the Center that it reasonably described the records sought.  "[T]here is a difference in kind between requests for documents that 'mention' or 'reference' a specified person or topic and those seeking records 'pertaining to,' 'relating to,' or 'concerning' the same." *Shapiro v. Cent. Intel. Agency*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016).  The Center's requests fall comfortably into the former category.  Part 2(a) concerns records, including policy documents, reports, memos, and manuals, about USCIS's determination that a supporter's immigration status fits into the "Other" category, and Part 2(b) addresses records about any subcategories within that group.  Parts 2(c) and 2(d) address non-human supporters labeled as "Other," seeking records

showing the number of such supporters and certain identifying information about them, respectively. Given the specificity within Part 2 of the Center's request, the cases USCIS cites addressing "vague and ambiguous language, including 'pertaining to' 'related to' and 'regarding,'" are inapposite. *E.g.*, *Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85-86 (D.D.C. 2021) (holding that a request for documents "referencing or regarding in any way" eight different topics was not reasonably descriptive and failed to "distinguish" itself from other requests that were overly broad); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 57, 61-62 (D.D.C. 2013) (holding that a request for "all" documents that "refer or relate to [sixty-three categories of records] in any way" was fatally overbroad and noting that the plaintiff "refused to discuss narrowing its requests"); *see* ECF No. 15, at 6-7.

Additionally, and contrary to USCIS's argument, ECF No. 15, at 6-7, a request for all records "sufficient to show" the requested information about financial supporters is not the same as a request for all documents "related" to that category of supporters. *Compare Sufficient*, Black's Law Dictionary (12th ed. 2024) (defining the term to include only "[a]s much as is needed for a given purpose"), *with Related*, Black's Law Dictionary (12th ed. 2024) (defining the term to mean "[c]onnected in some way" or "having relationship to or with something else"). USCIS offers only one case to establish that these two types of requests—those for records "sufficient to show" information and those for records "pertaining to," "related to," or "regarding" a topic—are similar. ECF No. 15, at 7 (citing *Haitian Bridge All. v. Dep't of Homeland Sec.*, No. 22-CV-8344, 2024 WL 476304 (S.D.N.Y. Feb. 7, 2024)). In *Haitian Bridge Alliance*, the plaintiffs' FOIA request sought "[a]ll [r]ecords . . . whether informal or formal, created since September 1, 2021, . . . related to or reflecting" various immigration actions at a border crossing in Del Rio, Texas. 2024 WL 476304, at *2 (first three alterations in original) (internal quotation marks

10

omitted).  After the agency informed the plaintiffs that the request was not reasonably descriptive and provided a proposal for limiting it, *id.* at *2-3, the plaintiffs demanded that the agency amend its proposal to include a search for records "reflecting" certain data that would produce records "sufficient to show" how the agency processed requests from and tracked information about migrants in Del Rio, *id.* at *3.  In holding that the amended request was overbroad, the court reasoned that it would "necessitate a search" of "all employee communications that may mention individual migrants' requests" and agency "records, law enforcement databases, and Alien files of every migrant that was present in Del Rio."  *Id.* at *7 (footnote omitted).

*Haitian Bridge Alliance* is distinguishable twice-over.  First, the Center's request plainly narrowed the relevant inquiry in ways that the *Haitian Bridge Alliance* plaintiffs failed to do.  In Part 2, the Center requested internal documents about USCIS's decisionmaking and aggregate data about a subcategory of financial supporters.  ECF No. 1-1, at 1, *see Haitian Bridge All.*, 2024 WL 476304, at *6 (rejecting the plaintiffs' argument that the request was "limited [to] total data" because that limitation was not "explicit").  Second, while the court in *Haitian Bridge Alliance* concluded that the contested FOIA request "d[id] not identify precisely what records [were] being requested," its reasoning focused more on the burden the agency would face responding to the request than on the agency's inability to decipher which records the plaintiffs sought.  *See* 2024 WL 476304, at *7 ("Due to this overbreadth, the . . . [request] would not allow agency employees . . . to locate the records with a reasonable amount of effort.").  This court understands these to be distinct inquiries: FOIA separately requires those seeking records to submit requests that are reasonably descriptive, only necessitate reasonable efforts to respond, and do not involve creating new records.  *See Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 270-71 (D.D.C. 2022); *see also Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir.

1982) (noting that "the number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described'").

Nor is USCIS correct in its related argument that the Center is seeking "general subject matter" as opposed to records. ECF No. 21, at 2. The agency's discussion of *Hall & Associates v. Environmental Protection Agency*, No. 16-5315, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018) (per curiam), the primary case it relies on for this proposition, *see* ECF No. 21, at 1-2, demonstrates why. In *Hall*, the plaintiff provided a statement to the Environmental Protection Agency ("EPA") administrator about an accusation of "science misconduct" and asked the agency to "provide . . . all records or factual analyses that show th[e] *statement is incorrect*." 2018 WL 1896493, at *1 (emphasis added). As the D.C. Circuit recognized, this request "did not reasonably describe the documents sought." *Id.* at *2. But the Center is neither asking USCIS to find *all* records without a limiting principle nor directing USCIS to reach a new opinion on why a discrete matter is right or wrong. USCIS's characterization of the requester in *Hall* as "ask[ing] the [EPA] to search for records sufficient to show . . . pieces of information," ECF No. 21, at 2, simultaneously misunderstands the text of that request and unreasonably interprets the Center's request, *see* ECF No. 17-1, at 11-12 (explaining that the plain text of the request only asked for "[e]nough records to show" specific data points or USCIS's practice for defining and categorizing financial supporter applicants (emphasis omitted)).[5]

---

[5] USCIS also asserts that "[r]equests that call for 'specific pieces of information rather than records' are not proper FOIA requests." ECF No. 21, at 1-2 (quoting *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 104 (D.D.C. 2012)). The agency's selective quotation of *Jean-Pierre* omits the relevant doctrinal point of the opinion. In *Jean-Pierre*, the "specific pieces of information" at issue were answers to discrete questions formulated by a federal prisoner, including "'who gave the order' to transfer [the] plaintiff, and 'on what day' [the] prison officials

*(continued on next page)*

"[W]hether a particular FOIA request reasonably describes the records sought is a highly context-specific inquiry." *Gun Owners of Am., Inc. v. Fed. Bureau of Investigation*, 594 F. Supp. 3d 37, 47 (D.D.C. 2022) (alteration in original) (internal quotation marks omitted) (quoting *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 898 F. Supp. 2d 233, 278 (D.D.C. 2012)).   Here, context indicates that the Center's request reasonably describes the records the Center is seeking. Accordingly, the court will deny USCIS's motion for summary judgment and grant the Center's cross-motion as both concern the Center's description of Part 2 of its request.[6]

### B.      Adequacy of USCIS's Search

The parties also dispute the adequacy of USCIS's search for responsive records to Part 2 of the Center's request.  ECF No. 17-1, at 24-30; ECF No. 21, at 7-10; ECF No. 23, at 5, 11-24. USCIS justifies its search by relying on the declaration of Mr. Panter.  ECF No. 15-2, at 1-9; *see* ECF No. 21, at 7-10.  With respect to Part 2(a) of the Center's request—which seeks information about the category of supporters labeled "Other"—the agency "conducted a search and determined that no such records exist because 'Other' is simply a default category for anything that does not fall into the predefined classifications." ECF No. 15-2, at 6 ¶ 16 (emphasis omitted).  With respect to USCIS's search effort for the entire FOIA request, Mr. Panter explains that USCIS's National Records Center ("NRC") asked three units in the agency to search for records.  *Id.* at 8-9 ¶¶ 21-24.

---

call[ed] a particular federal agent to come see him."   880 F. Supp. 2d at 103-04.  The Center's request is categorically unlike the one from *Jean-Pierre*—meaning the line of cases involving questions posed in FOIA requests is inapposite.  *See Brown v. Fed. Bureau of Investigation*, 675 F. Supp. 2d 122, 129 (D.D.C. 2009) (noting that FOIA "does not require an agency . . . to answer questions").

[6] Because the court concludes that USCIS's characterization of the Center's request is unreasonable, the court declines to wade into the Center's arguments about USCIS's allegedly "recalcitrant and obdurate behavior when communicating" during this litigation and whether the agency complied in good faith with its regulations.  ECF No. 17-1, at 13-15; ECF No. 23, at 7.

NRC first directed the Office of Performance and Quality ("OPQ"), which serves as the "steward[]" of [USCIS's] data," *id.* at 8 ¶ 21, to "read the request and use any search terms or phrases that would reasonably be calculated to locate [responsive] records," *id.* at 8 ¶ 22.  OPQ was also asked whether "any additional offices may have responsive records so that they could be asked to search as well."  *Id.* at 8 ¶ 22.  OPQ determined that it "could not access the requested information" because it "is not part of the Form I-134As" and the only way to provide the "information requested" would be to "creat[e] records."  *Id.*  Second, NRC tasked the Verification Division with searching two systems, neither of which contained the requested information.  *Id.* at 8-9 ¶ 23.  Finally, NRC had its Office of Policy and Strategy ("OP&S") conduct a search, and the unit "stated that they do not maintain the requested data."  *Id.* at 9 ¶ 24.

### 1.    Adequacy of USCIS's search for Part 2(a)

The Center first takes issue with USCIS's approach to Part 2(a), arguing that USCIS's search was not reasonably calculated to uncover all responsive records because the agency failed to ask the entity "directly involved with the actual oversight, processing, and approval of the financial Supporters' I-134A applications."  ECF No. 17-1, at 29; *see* ECF No. 23, at 15 (suggesting that the "office or division involved with processing and approval of 'Supporters' applications would be most reasonably likely to possess [the relevant] records").[7]  The Center concedes that tasking OP&S was "a good place to start" but insists that USCIS should have asked additional offices to conduct a search.  ECF No. 17-1, at 29; *see* ECF No. 23, at 15 (arguing that OP&S is only responsible for "macro agency[-]wide" strategy).  Specifically, the Center maintains

---

[7] The court addresses Part 2(a) separately because it includes a request for internal policy documents, whereas Parts 2(b) through 2(d) only seek information disclosed in financial supporters' applications.  *See* ECF No. 1-1, at 1.

that USCIS's "Service Centers" and "National Benefit Center" would most likely have documents responsive to the request for policy documents, reports, memos, and manuals.  ECF No. 23, at 15.

The court concludes that USCIS's description of its search for Part 2(a) records is satisfactory as to OPQ's efforts.  Mr. Panter explains that the "Other" category is "a default [one] for anything that does not fall into the predefined classifications."  ECF No. 15-2, at 6 ¶ 16.  And he avers that his conclusion is based on the search USCIS conducted, *id.*, which necessarily includes the representations the agency received from OPQ.  And OPQ, which is responsible for USCIS's data, *id.* at 8 ¶ 21, determined—after it was "instructed to read the request and use any search terms or phases that would reasonably be calculated to locate [responsive] records"—that the "requested information . . . is not part of the Form I-134As," *id.* at 8 ¶ 22.  OPQ thus concluded that the Form I-134A does not include a definition of "Other" or indicate how the agency "determines whether a 'Supporter' is appropriately categorized as 'Other.'"  ECF No. 1-1, at 1.

The court nevertheless finds that USCIS's search declaration concerning Part 2(a) is insufficient in several respects.  *See Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909, 924 (D.C. Cir. 2024) (explaining that the court was "left with 'material doubt' that the 'search was "reasonably calculated to uncover all relevant documents"'" (quoting *Valencia-Lucena*, 180 F.3d at 325)).  To begin, OP&S's determination about potentially responsive records does not support Mr. Panter's assertion that, based on USCIS's search, no records exist regarding the category "Other."  *See* ECF No. 15-2, at 6, 9 ¶¶ 16, 24.  OP&S stated in response to NRC's instructions that "they do not maintain the requested *data*."  *Id.* at 9 ¶ 24 (emphasis added).  But as the Center contends, ECF No. 17-1, at 27; ECF No. 23, at 14-15, Part 2(a) expressly requests "policy documents, reports, memos, [and] manuals," ECF No. 1-1, at 1, not data.  It "is 'unreasonable for [an agency] to ignore . . . clear instructions conveying the

intended scope of a FOIA request, at least insofar as those instructions were contained within the four corners of the request itself.'" *Pulliam v. U.S. Env't Prot. Agency*, 235 F. Supp. 3d 179, 188 (D.D.C. 2017) (second alteration in original) (quoting *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 931 F. Supp. 2d 77, 102 (D.D.C. 2013)).  Here, the four corners of the Center's request indicated to USCIS that "policy documents, reports, memos, [and] manuals" fell within the scope of Part 2(a). ECF No. 1-1, at 1.  USCIS did not "provide[] a 'reasonably detailed' affidavit describing its search" because it ignored part of the Center's request altogether.  *Pinson*, 189 F. Supp. 3d at 149 (quoting *Morley*, 508 F.3d at 1116).

What is more, Mr. Panter's conclusion about the "Other" category is unsupported by the rest of the declaration.  He asserts that "no . . . records exist" concerning "how USCIS determines the classification of 'Other'" because that category "is simply a default . . . for anything that does not fall into the predefined classifications."  ECF No. 15-2, at 6 ¶ 16 (emphasis omitted). According to Mr. Panter, this follows from the "search" USCIS "conducted."  *Id.*  The conclusion may well be correct, but it is not justified by the information NRC claims it received from OPQ, the Verification Division, and OP&S.  OPQ merely determined that "the requested information . . . is not part of the Form I-134As."  *Id.* at 8 ¶ 22.  On its own terms, OPQ's search did not purport to extend beyond information contained in a Form I-134A, which necessarily would not cover USCIS's approach to categorizing financial supporters by immigration status. Nor does the declaration explain why the Verification Division's search would support Mr. Panter's conclusion; that unit only searched one system that "allows employers to confirm the employment eligibility of newly hired workers" and another that is used to "verify a noncitizen's immigration status to determine eligibility for public benefits, licenses, and other services."  *Id.* at 8-9 ¶ 23.  Finally, OP&S's assertion that it "do[es] not maintain the requested data," *id.* at 9

16

¶ 24, has no connection to Mr. Panter's statement that "'Other' is simply a default category," *id.* at 6 ¶16.

USCIS does not meaningfully argue otherwise. In the only portion of its reply brief that defends the adequacy of its search, USCIS focuses on the search efforts for Parts 2(b), 2(c), and 2(d) of the Center's request. *See* ECF No. 21-at 8-10. Elsewhere, USCIS parrots the search declaration's assertion that "'Other' is a default category," *id.* at 4, without explaining why the agency's search warrants that conclusion. Because USCIS has not met its burden of providing a reasonably detailed affidavit directed at the search for records that fall under Part 2(a), the burden does not shift to the Center to produce countervailing evidence. *Pinson*, 189 F. Supp. 3d at 149. Accordingly, the court will grant the Center's motion for summary judgment with respect to the adequacy of USCIS's search for Part 2(a).

### 2.     Adequacy of search for Parts 2(b), 2(c), and 2(d)

The Center contests USCIS's search for records under Parts 2(b) through 2(d) in three ways. First, the Center asserts that USCIS failed to "properly ascertain the scope" of the request, ECF No. 17-1, at 24-25, which resulted in a "perfunctory" search that was not "tailored" to uncover responsive records, *id.* at 26 (first quoting *Valencia-Lucena*, 180 F.3d at 325; then quoting *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998)). Second, the Center maintains that USCIS's search, as outlined in Mr. Panter's declaration, covered only Part 1—and not Part 2—of the FOIA request. *Id.* at 26-27; *see* ECF No. 23, at 18. The Center then claims that USCIS should have tasked additional units in the agency with looking for responsive records, including those "offices involved with the oversight, processing, and approval of financial 'Supporter' applicants." ECF No. 17-1, at 29; *see* ECF No. 23, at 18-22. The court concludes that

17

USCIS has not satisfied its obligation to demonstrate that its search was reasonably calculated to uncover all relevant documents.[8]

First, the declaration is insufficient because it does not establish that USCIS directed all relevant units to conduct a search, meaning the "search method . . . was [not] reasonably calculated to uncover *all* relevant documents." *Oglesby*, 920 F.2d at 68 (emphasis added). To be sure, "OPQ was instructed to advise the FOIA office if any additional offices may have responsive records so that they could be asked to search as well." ECF No. 15-2, at 8 ¶ 22. But the declaration never explains what OPQ staff told NRC in response to that instruction, so the court is left to speculate about OPQ's conclusion. Nor does USCIS's declaration even say that the three offices tasked with a search—OPQ, the Verification Division, and OP&S—are the ones most likely to contain responsive records. *See Oglesby*, 920 F.2d at 68 ("At the very least, [the] State [Department] was

---

[8] Although the court agrees with the Center that USCIS's declaration is insufficient, the court concludes, contrary to the Center's characterization of the search declaration, ECF No. 17-1, at 26-27, that USCIS's search—albeit inadequate—covered Part 1 *and* Part 2. For support, the Center primarily relies on paragraph twenty of Mr. Panter's declaration, in which he states that "the NRC construed [the request] as seeking data related to a breakdown of *visa categories* supported by USCIS Form I-134A." ECF No. 15-2, at 8 ¶ 20 (emphasis added); *see* ECF No. 17-1, at 27. Because Part 1 of the FOIA request concerned non-immigrant financial supporters, the Center assumes that the declaration's focus on "visa categories" excludes any search for supporters in the "Other" category. *See* ECF No. 17-1, at 27. That characterization cannot be squared with the Form I-134A or Mr. Panter's declaration. As for the Form I-134A, the portion of the application prompting an applicant to choose "Other" asked about the financial supporter's "immigration status." ECF No. 15-2, at 28; *see* ECF No. 17-4, at 2. Given the layout of the form, USCIS's description of the request as seeking a breakdown of "visa categories" could reasonably include the categorization of people or entities in the group labeled "Other"—which would implicate Part 2—because many of the remaining options refer to an applicant's visa status. *See* ECF No. 15-2, at 28 (including options for lawful permanent residents and non-immigrants); ECF No. 17-4, at 2 (including options for lawful permanent residents, non-immigrants, asylees, refugees, and parolees, among others). Moreover, before OPQ conducted its search, it was "instructed to read the request," which Mr. Panter does not say was limited to Part 1, and then "use any search terms or phrases that would reasonably be calculated to locate records responsive to the request." ECF No. 15-2, at 8 ¶ 22.

required to explain in its affidavit that no other record system was likely to produce responsive documents.").

USCIS argues that OPQ "would have had [any responsive records] or would have been able to identify the office in USCIS that did." ECF No. 21, at 9.  The agency further asserts that "[i]f the information [the Center] seeks existed outside of the Forms I-134A, then [OPQ], the Verification Division, and [OP&S] would have the information or know which part of USCIS is most likely to have [it]." *Id.* at 10.  Neither of those arguments, however, is supported by Mr. Panter's declaration, which is silent on why *only* those three offices were chosen and whether others might have responsive records.  And even if USCIS's argument was supported by the substance of its declaration, "the question is not whether the agency searched the *most likely* places to maintain responsive records; the question is whether the agency searched *all* places where records were reasonably likely to be found."  *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 114 (D.D.C. 2023).  Absent information about why no other offices were tasked with searching, which USCIS must set forth "with reasonable detail," the court cannot conclude that USCIS conducted an adequate search.[9]  *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 739 (D.C. Cir. 2017) (quoting *Oglesby*, 920 F.2d at 68); *see Leopold v. Dep't of Def.*, 752 F. Supp. 3d 66, 77 (D.D.C. 2024) (denying an agency's summary judgment motion on the adequacy of its

---

[9] Given the deficiencies in USCIS's declaration, the court declines to evaluate whether specific other offices in USCIS should have been tasked with conducting a search.  *See* ECF No. 17-1, at 28-29 (asserting that "[t]he offices that directly oversee[], process[], and/or approve[] financial Supporters' . . . applications would reasonably have much better insights in[to] what records or records systems would . . . contain records"); ECF No. 23, at 22 (suggesting that USCIS's "National Benefits Center, Service Centers, and/or . . . Fraud Detection and National Security Directorate" are "most likely" involved in "the processing, verification, and approval of . . . applications").

search in part because its declaration "d[id] not state that no other [agency] component was also likely to have records").

Second, Mr. Panter's descriptions of OPQ's and OP&S's searches lack necessary detail. That is, even assuming these were among the sole offices with potentially responsive records, USCIS's declaration cannot establish the adequacy of its search. The declaration merely provides that NRC tasked the offices with searching and both concluded that no records exist or that they do not maintain the requested data. *See* ECF No. 15-2, at 8-9 ¶¶ 22, 24. "[A]n affidavit that 'merely states the fact that [an office] searched and expresses [its] conclusion that files contain nothing [responsive]' 'gives no detail as to the scope of the examination and thus is insufficient as a matter of law.'" *Aguiar*, 865 F.3d at 738 (fourth alteration in original) (quoting *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 370 & n.49 (D.C. Cir. 1980)); *see DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015) (holding that a declaration describing the employees to whom the search "was assigned," "why they were chosen," and what they found was "not sufficiently detailed to support a summary judgment because it d[id] not disclose the search terms" and "the type of search performed"). Neither office here described what records systems it maintains or, with respect to OPQ, which systems it searched.

Aside from its material deficiencies, USCIS's search declaration is also contradicted by the Form I-134 and Form I-134A. OPQ represented to NRC that "the requested information [by the Center] . . . is not part of the Form I-134As." ECF No. 15-2, at 8 ¶ 22. As a threshold matter, it is unclear whether the "requested information" that OPQ mentions covers Parts 2(b), 2(c), and 2(d) of the Center's request, although USCIS contends that it does. *See* ECF No. 21, at 8 (arguing that USCIS conducted a search for Part 2 and pointing to OPQ's response). The court agrees with USCIS that OPQ's search presumably covered Part 2, *see supra* note 8, but that understanding

20

creates a problem for the agency while solving another.  In Parts 2(c) and 2(d), the Center seeks the number of, names for, and quantity of parolees sponsored by financial supporters categorized as "Other" that are "non-human entit[ies]" like "corporation[s], organization[s], [or] governmental institution[s]."  ECF No. 1-1, at 1.  As the Center explains, the Form I-134A directs any applicant selecting "Other" for immigration status to explain the reason for choosing that designation.  ECF No. 15-2, at 28 (question 15 in Part 3 of the Form I-134A); *see* ECF No. 17-1, at 17-18; *see also* ECF No. 17-4, at 2 (question 10 in Part 2 of the Form I-134).  And, a financial supporter applicant must "[p]rovide the name of the organization, group, or individual that is providing support to the beneficiary with [the individual submitting the application]."  ECF No. 15-2, at 26 (question 3 in Part 3 on the Form I-134A); *see* ECF No. 17-5, at 3 (directing any person "complet[ing] th[e] declaration" on the Form I-134 who "is associated with a business or organization" to "complete the business or organization name and address information").  The Form I-134 and Form I-134A therefore prompt an applicant to include information about organizational or institutional entities that financially support beneficiaries, which cannot be squared with OPQ's assertion that "the requested information . . . is not part of the [form]."  ECF No. 15-2, at 8 ¶ 22.

Nor can OPQ's understanding of the Form I-134A be reconciled with Mr. Panter's conclusion that the *only* way USCIS could respond to Parts 2(b), 2(c), and 2(d) of the request would be to "search through all . . . 'others' in the Form I-134A applications[] to determine their different categories and identify non-human entities."  *Id.* at 6 ¶ 16.  OPQ believes that the Center's request seeks information "not part of the Form I-134As," whereas Mr. Panter asserts that the Center seeks information that requires USCIS to comb through individual responses to that form.  Put differently, the search declaration is internally inconsistent: to justify the purportedly burdensome task of producing records, USCIS contradicts what the agency's "steward[]

21

of . . . data," *id.* at 8 ¶ 21, concluded "[b]ased on its search," *id.* at 8 ¶ 22. The declaration's inconsistencies further demonstrate why it is insufficient to sustain USCIS's search. Accordingly, the court will grant the Center's motion for summary judgment with respect to the adequacy of USCIS's search for records under Parts 2(b), 2(c), and 2(d) of the FOIA request.

### C.    USCIS's Remaining Arguments

USCIS also argues that it has no obligation to process any results because doing so would be unduly burdensome, ECF No. 15, at 9-11; ECF No. 21, at 4-6, and that processing the Center's FOIA request would require it to research and create new records, ECF No. 15, at 11-12; ECF No. 21, at 6-7. The Center responds that USCIS misinterpreted the FOIA request and, as a result, the agency's assessment of the work involved in responding is erroneous. ECF No. 17-1, at 16-24; ECF No. 23, at 7-11. In light of the court's conclusion that USCIS conducted an inadequate search, *see supra* Section III.B, it would be premature to resolve the remaining issues. Any decision about undue burden or creation of records would necessarily rely on a plainly defective declaration. The court cannot reach an informed conclusion about the burden of responding, the need to conduct research, or the creation of records when USCIS's assertions are premised on an incorrect understanding of the request and an inadequate search. Only once USCIS appropriately construes Part 2 and sufficiently explains its conclusions can the court assess what effort it would take the agency to comply with FOIA.

### IV.    CONCLUSION

Consistent with the above, it is hereby **ORDERED** that USCIS's Motion for Summary Judgment, ECF No. 15, is **DENIED** and that the Center's Cross-Motion for Summary Judgment,

22

23

ECF No. 17, is **GRANTED** in part and **DENIED** in part.  It is further **ORDERED** that the parties

shall file a joint status report proposing next steps in this litigation on or before April 13, 2026.

> **SO ORDERED.**

_____

LOREN L. ALIKHAN
United States District Judge

Date:    March 30, 2026